[Cite as *State v. Rucker*, 2026-Ohio-2537.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 115396 |
| v. | : | |
| EDMUND RUCKER, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694826-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joshua Mason, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Edmund Rucker ("Rucker") appeals his convictions for burglary and robbery following a bench trial in the Cuyahoga County Court of Common Pleas. In his sole assignment of error, Rucker contends his

burglary and robbery convictions are against the manifest weight of the evidence. After independently reviewing the record and the governing law, we affirm.

## I.    Factual and Procedural Background

{¶ 2}    On August 29, 2024, a Cuyahoga County Grand Jury indicted Rucker on three counts: Count 1, burglary in violation of R.C. 2911.12(A)(1), a felony of the second degree, with a notice-of-prior conviction and a repeat-violent offender specification; Count 2, robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree; and Count 3, theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree.

{¶ 3}    The matter proceeded to a bench trial on July 8, 2025, after Rucker rejected a packaged plea offer and executed a written jury waiver. (Tr. 34-43.) The State called four witnesses. The following facts were elicited at trial.

{¶ 4}    In the early morning hours of August 25, 2024, Walid Alqa'qah ("Walid") and his 17-year-old son, A.W., were working as cashiers at a Sunoco gas station located off Turney Road in Garfield Heights, Ohio. (Tr. 75-76, 100-101.) Rucker arrived at the station in a red vehicle, parked at a gas pump, and entered the store wearing a green-and-white striped shirt. (Tr. 81, 103-104.)

{¶ 5}    According to A.W., Rucker initially approached the counter and stated words to the effect of, "I want to fill up my car. I need to use the gas. Can you start it for me please?" (Tr. 82.) Rucker then told A.W. to put the cigarettes and money in a bag and to stay out of his way. (Tr. 82.) A.W. testified that Rucker kept his hand inside or beneath his pants, that he believed Rucker had a gun, that he was

afraid Rucker would shoot him, and Rucker was very loud and physically larger than him.  (Tr. 84, 94-95.)

{¶ 6}  Walid similarly testified that Rucker entered the gas station, stood in front of him with his hand under his pants, and in a loud voice demanded that all of the money and cigarettes be placed in a bag.  (Tr. 102.)  Walid testified that as Rucker approached the counter, Rucker told him to put the money and cigarettes in a bag "or I'll kill you" and that Rucker stated he was "going to kill" Walid and his son.  (Tr.  109; *see also* tr. 125-126.)  Walid testified that he believed Rucker had a firearm based on Rucker's conduct, although he never saw a gun.  (Tr. 111, 122, 137-138.)

{¶ 7}  Rucker walked behind the counter, an area customers were not permitted to enter, separated from the public portion of the store by a counter, a glass window, a wall, a doorway, and through a door that was kept open.  (Tr.  80-81, 104-107, 111, 116.)  Rucker attempted to take a drawer of cigarettes, then opened the cash register, removed the cash, placed it in his pocket, and walked out of the store, taking an apple as he left.  (Tr. 84-86, 111, 115.)  Walid and A.W. called the police.  (Tr. 86.)

{¶ 8}  Patrolman Michael Malak of the Garfield Heights Police Department responded within seconds.  (Tr. 51-55, 64.)  Officers located Rucker beside his vehicle at a gas pump because he matched the dispatched description.  (Tr. 54-55.)  When Rucker saw the police, he attempted to flee, threw the apple at an officer, and was tased and arrested.  (Tr. 58, 143-144.)  Detective-Sergeant Carlos Crespo testified that after being apprehended, Rucker made statements to the effect of

"release me" and "y'all gonna die," and described Rucker's demeanor as erratic. (Tr. 145.) No firearm was recovered from Rucker's person, although officers recovered a firearm magazine from his vehicle. (Tr. 65.) The incident was captured by store surveillance video, which contained no audio. (Tr. 135, 141-143.)

{¶ 9} On cross-examination, the defense elicited that on the morning of the offense, Walid told responding officers that Rucker did not touch him, that Walid did not see a gun, and that, when asked whether he felt threatened, Walid answered "no." (Tr. 122, 129-132; Defense Ex. A.) A.W. did not speak with the police at the scene. (Tr. 88.) On redirect, Walid explained that he speaks Arabic, no interpreter was present when officers first questioned him, and that he did not understand or did not answer all of the officers' questions at that time. (Tr. 130, 133, 136-138.) Detective-Sergeant Crespo testified that victims and witnesses do not always provide responding officers with the same level of detail later provided to investigators, particularly following traumatic events. (Tr. 147.).

{¶ 10} At the close of the State's case, Rucker moved for acquittal under Crim.R. 29; the trial court denied the motion as to Counts 1 and 2, and Rucker rested without presenting evidence. (Tr. 156-164.) During trial and in connection with the Crim.R. 29 motion, defense counsel conceded that Rucker committed a theft and that Rucker trespassed when he went into the separate area behind the counter. (Tr. 157-158, 178-179.)

{¶ 11} On July 17, 2025, the trial court found Rucker guilty of all counts and specifications. In announcing its verdict, the court stated that it had weighed the

credibility of the witnesses and had "determined what testimony is worthy of belief and what testimony is not worthy of belief." (Tr. 194-196.) On July 18, 2025, the court imposed concurrent prison terms of four to six years on Count 1, under Reagan Tokes, 36 months on Count 2, and 12 months on Count 3, with 217 days of jail-time credit. (Tr. 221-224.) Rucker filed a timely notice of appeal raising a single assignment of error.

## II. Assignment of Error

Appellant's convictions are against the manifest weight of the evidence.

## III. Standard of Review

{¶ 12} A manifest-weight challenge contests whether the State carried its burden of persuasion at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). Unlike a sufficiency review, which tests the legal adequacy of the evidence, a manifest-weight review concerns "the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other." *Id.* at 387.

{¶ 13} In conducting a manifest-weight review, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14; *State v. Walker*, 2026-Ohio-1767, ¶ 48 (8th Dist.), citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12. This discretionary power is reserved for the exceptional case in which

the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 14} Because Rucker waived his right to a jury and tried his case to the bench, the question is whether the trial court, as the trier of fact, clearly lost its way. *Cleveland v. Welms*, 2006-Ohio-6441, ¶ 16 (8th Dist.). We defer to the finder of fact on matters of credibility because the trier of fact is best positioned to observe the demeanor, gestures, and voice inflections that are critical to assessing whether a witness's testimony is worthy of belief. *State v. Walker*, 2026-Ohio-1767, ¶ 50 (8th Dist.), citing *State v. Jones*, 2025-Ohio-2866, ¶ 47 (8th Dist.). The factfinder is free to believe all, part, or none of any witness' testimony. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

## IV. Law and Analysis

{¶ 15} Rucker conceded at trial that he committed a theft and does not separately challenge his theft conviction. We therefore confine our analysis to the burglary and robbery convictions.

### A. Count 2 — Robbery

{¶ 16} Rucker was convicted of robbery under R.C. 2911.02(A)(3), which provides that no person, in attempting or committing a theft offense or in fleeing immediately after, shall "[u]se or threaten the immediate use of force against another." "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Rucker concedes that he committed a theft offense but argues that the State failed

to prove he used or threatened the immediate use of force, contending that Walid's and A.W.'s testimony about threats was not credible.

{¶ 17} Whether a defendant threatened the immediate use of force is measured against an objective standard. In *State v. Davis*, 6 Ohio St.3d 91, 93-94 (1983). In *Davis*, the Ohio Supreme Court explained that the element is satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." Consistent with that objective measure, a defendant's conduct and demeanor, even apart from any verbal threat, may support a finding of a threat of force. *State v. Smith*, 2015-Ohio-2842, ¶ 18 (9th Dist.); *State v. Payne*, 2013-Ohio-3729, ¶ 14-15 (8th Dist.).

{¶ 18} The record contains substantial evidence supporting the robbery conviction. The trial court heard direct testimony that Rucker entered the store, loudly demanded that the money and cigarettes be placed in a bag, kept his hand beneath his clothing in a manner that led both cashiers to believe he was armed, and told Walid that he was "going to kill" him and his son. (Tr. 84, 102, 109, 111.) A verbal threat to kill, made while taking a store's money from those who work there, falls squarely within a threat of the immediate use of force. And even setting the verbal threat aside, Rucker's conduct including the loud demands and the gesture suggesting a concealed firearm, is the type of conduct that under *Davis*, *Smith*, and

*Payne*, is objectively likely to induce a reasonable person to part with property against their will.

{¶ 19} Rucker's contrary argument, at its core, challenges the credibility of the cashiers' testimony. He emphasizes that the surveillance video has no audio; that Walid told officers on the morning of the offense that Rucker did not touch him, that Walid did not see a gun, and answered "no" when asked whether he felt threatened; that A.W. did not report a threat to police; and that the explicit death threat surfaced for the first time at trial nearly a year later. He also points to Walid's conduct in the parking lot, where Walid approached Rucker and had to be pulled back by an officer, as inconsistent with genuine fear.

{¶ 20} These are precisely the kinds of conflicts and credibility questions committed to the discretion of the trier of fact. The trial court heard Walid's explanation that he speaks Arabic, that no interpreter was present when officers first questioned him, and that he did not understand or answer all of the officers' questions at the scene. (Tr. 130, 133, 136-138.) The court also heard Detective-Sergeant Crespo testify that witnesses commonly provide investigators with details not initially given to responding officers, particularly after a traumatic event. (Tr. 147.) The court was entitled to credit those explanations, to believe the cashiers' trial testimony, and to weigh Rucker's own post-arrest statements ("y'all gonna die") in assessing the plausibility of the earlier threats. (Tr. 145.) That a different factfinder might have weighed these matters differently does not establish that the

trial court clearly lost its way. *See DeHass* at paragraph one of the syllabus; *State v. Burks,* 2018-Ohio-4777, ¶ 48 (8th Dist.).

{¶ 21} Although Walid's morning statement that he did not feel threatened presents the strongest point in Rucker's favor, the trial court was entitled to reconcile that statement with Walid's trial testimony in light of the language barrier and the absence of an interpreter, and to conclude that the inconsistency reflected those circumstances rather than fabrication. This is not the exceptional case in which the evidence weighs heavily against the conviction. The robbery conviction is not against the manifest weight of the evidence.

## B. Count 1 — Burglary

{¶ 22} Rucker was convicted of burglary under R.C. 2911.12(A)(1), which prohibits a person, "by force, stealth, or deception," from trespassing "in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." Rucker concedes that the gas station was an occupied structure; that the area behind the counter was a separately occupied portion of that structure; that another person was present; that he did not have permission to go behind the counter; and that his purpose in doing so was to commit a theft offense. (Tr. 95, 116, 157-158.) The sole disputed element is whether the trespass behind the counter was accomplished "by force, stealth, or deception."

{¶ 23} The statutory language is stated in the disjunctive. Accordingly, the State was required to prove only one of the three alternative means. *See State v. Johnson*, 2009-Ohio-4361, ¶ 29 (8th Dist.).

{¶ 24} We agree with Rucker that the evidence does not support the finding of stealth. "Stealth" involves "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within" the premises of another without permission. *State v. Lucas*, 2024-Ohio-842, ¶ 60 (8th Dist.). Here, Rucker entered a public business during operating hours, made his presence known immediately, and openly announced his demands. Nothing about Rucker's entry into the store was secretive or clandestine.

{¶ 25} The record does, however, contain evidence from which the trial court could reasonably conclude that the trespass behind the counter was accomplished by deception. Both Walid and A.W. testified that Rucker initially approached the counter as though he were an ordinary customer seeking gasoline service. (Tr. 81-82, 103-104.) According to A.W., Rucker first stated words to the effect of, "I want to fill up my car. I need to use the gas. Can you start it for me please?" (Tr. 82.) Only after approaching the counter under the guise of purchasing gas did Rucker begin demanding money and cigarettes and move into the employees' area behind the counter. (Tr. 82-86, 111.)

{¶ 26} From this evidence, the trial court could reasonably infer that Rucker gained proximity to the secured employee area by falsely presenting himself as a legitimate customer before revealing his criminal purpose. Ohio courts have

recognized that a defendant may commit burglary by deception where the defendant gains access to a restricted area by creating a false impression regarding his purpose or intentions. *See Johnson* at ¶ 29-31. Although the record does not show that Rucker expressly requested permission to enter the employee area, the trier of fact could find that his initial representation that he merely sought gas service was designed to lower the employees' guard and thereby facilitated his subsequent trespass into the separately occupied employee area.

{¶ 27} In addition, although not necessary to sustain the conviction, the record also contains evidence supporting the alternative theory that the trespass was accomplished by force. "Force" is defined broadly as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The evidence the trial court credited established that Rucker loudly demanded money and cigarettes, kept his hand beneath his clothing in a manner that caused both employees to believe he possessed a firearm, and threatened to kill Walid and his son. (Tr. 84, 102, 109, 111.) Both employees testified that they moved away or refrained from interfering because they believed Rucker was armed. (Tr. 84-86, 111.) The trial court could reasonably conclude from that testimony that Rucker's threatening conduct compelled the employees to yield access to the restricted employee area behind the counter. *See State v. Tyson*, 2011-Ohio-4981, ¶ 28 (10th Dist.). Although the doorway itself was open, the trier of fact was permitted to find that Rucker's threats and implied possession of a weapon

overcame any resistance to his entry into the separately occupied portion of the store.

{¶ 28} Rucker's challenge to these findings again depends primarily upon witness credibility. He emphasizes the inconsistencies between the employees' trial testimony and their statements to responding officers, including Walid's initial denial that he felt threatened. (Tr. 122, 129-132.). But the trial court heard testimony concerning Walid's language difficulties, the absence of an interpreter at the scene, and the tendency of witnesses to provide additional details after traumatic events. (Tr. 130, 133, 136-138, 147.) The court expressly stated that it had weighed the credibility of the witnesses and determined what testimony it found worthy of belief. *State v. Jones*, 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline*, 2019-Ohio-528, ¶ 100 (8th Dist.).

{¶ 29} On this record, we cannot say the trial court clearly lost its way in finding that Rucker trespassed into the separately occupied employee area by deception and, alternatively, by force. Because the evidence supports at least one of the statutory means set forth in R.C. 2911.12(A)(1), the burglary conviction is not against the manifest weight of the evidence.

{¶ 30} Accordingly, Rucker's sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR